IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JUSTIN A. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-00645-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Justin Morgan ("Morgan") seeks judicial review of the Commissioner of Social Security's ("the Commissioner") denial of his application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 *et. seq*. The Administrative Law Judge ("ALJ") found that although Morgan sustained several severe impairments as a result of a motorcycle accident, he still retained the residual functional capacity ("RFC") to perform limited sedentary work. Based upon the testimony from the vocational expert ("VE"), the ALJ found that Morgan was not disabled under the regulations because he could still perform work as a surveillance system monitor, credit checker, and semiconductor bonder.

After careful review, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant.

Morgan filed an application for disability insurance benefits on October 1, 2008, alleging he became disabled beginning on May 18, 2008. On January 16, 2009, the Commissioner denied his application at the initial claim level, and Morgan appealed the denial to an ALJ. The ALJ held a video hearing and on October 4, 2010 issued her decision holding that Morgan was not disabled as defined in the Act. Finally, on March 24, 2012 the Appeals Council denied Morgan's request for review, leaving the ALJ's decision as the Commissioner's final decision. Morgan has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12 months, the Commissioner follows a five-step sequential evaluation process.[2]

Plaintiff contends the ALJ erred by: (1) finding that his back injury was not a severe impairment; (2) improperly determining his RFC; and (3) improperly formulating a hypothetical question, which ultimately resulted in a finding of no disability. These arguments are without merit.

### I. The ALJ did not err in determining Plaintiff's back pain was not a severe impairment.

On May 18, 2008, Plaintiff was severely injured in a motorcycle accident. The ALJ concluded that the lingering effects from this accident, including multiple fractures and a right axillary nerve injury, constituted severe impairments under the regulations. R. at 11. The ALJ, however, did not find Plaintiff's back pain was a severe impairment.[3] R. at 11, 13-14. Plaintiff alleges the ALJ should have found that his back pain in combination with his pain medication was a severe impairment because it interfered with his ability to perform basic work activities.

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

[3] Despite the ALJ's conclusion that the Plaintiff failed to demonstrate the back pain was a severe impairment, the ALJ still considered the back pain and the medication used to treat it in determining the RFC. R. at 12, 14.

3

A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe when it has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521; Social Security Ruling (SSR) 96-3p. The impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . and must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms . . ." *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011). The claimant bears the burden of establishing her impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although severity is not an onerous requirement to meet, it is also not a toothless standard. *Id.* at 70.

The totality of the record evidence supports the ALJ's conclusion that his back injury was not a severe impairment. Although Plaintiff suffered a fractured scapula and acromion in the accident that required corrective surgery, he did not suffer any spinal damage or lumbar fractures. R. at 374, 547, 550-51, 564, 579, 605, 608-11, 631-32, 635-36. Following corrective surgery for the scapula and acromion, Dr. Erich J Lingenfelter, M.D., Plaintiff's treating physician, noted that both fractures healed well and Plaintiff demonstrated reduced tenderness in the affected area. R. at 365, 369. Similarly, later CT scans corroborated these observations. R. at 484.

The only objective medical evidence supporting Plaintiff's contention of severe back pain consists of the treatment notes from Dr. Blake Donaldson, D.O. R. at 658-74. Aside from recording Plaintiff's symptoms of pain and tenderness on movement and palpation, Dr. Donaldson noted that Plaintiff exhibited signs of muscle spasms and tension. R. at 658, 661,

4

664, 667, 670, 673.  The ALJ properly noted these findings in her opinion, but ultimately concluded that the totality of the other record evidence failed to support Plaintiff's contention that the back pain was a severe impairment.  R. at 13.

Also, it is worth noting that the entire purpose of Dr. Donaldson's examinations revolved around pain management.  At the conclusion of every examination, Dr. Donaldson advised Plaintiff to continue taking his pain medication to mitigate the pain from the muscle tension and spasms.  R. at 658, 661, 664, 668, 670, 673.  The ability to control an impairment through use of medication weighs against a finding of disability.  *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009).  Although Plaintiff testified that his back pain remained severe despite the use of medication, the ALJ, as discussed more thoroughly below, properly discounted these claims due to inconsistencies between Plaintiff's statements and his daily activities.  R. at 14.  Consequently, substantial evidence on the record as a whole supports the ALJ's finding that his back pain was not a severe impairment.

## II.     The ALJ properly determined Plaintiff's RFC.

Following the video hearing and her review of the record, the ALJ determined Plaintiff's RFC.  She found, among other things, that Plaintiff must be able to change position every 30 minutes; he is limited in his ability to climb, balance, stoop, kneel, and crouch; he can never reach overhead with both arms or with his dominant right arm; he can frequently handle and finger bilaterally; and he must avoid exposure to hazardous work conditions, heights, and machinery.  R. at 12.  Plaintiff raises four arguments challenging the RFC determination process.  Each argument lacks merit.

### A. The ALJ properly considered Plaintiff's credibility.

First, Plaintiff contends the ALJ improperly discounted his credibility. He alleges the ALJ erred by discrediting his subjective complaints, because the medical evidence actually corroborated these statements and his daily activities are not inconsistent with his allegations of disabling pain and significant limitations.

RFC is defined as the most that a claimant can still do despite her physical or mental limitations. *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007). In assessing a claimant's RFC, the ALJ must consider the combined effect of both severe and non-severe medically determinable impairments. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). The ALJ must consider all relevant evidence, including medical records, observations from treating physicians, and the claimant's subjective statements about her limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The claimant bears the burden of demonstrating his RFC. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ's evaluation of a claimant's credibility is crucial to the RFC determination because it influences the inclusion or exclusion of alleged impairments. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). Thus, the credibility inquiry is often the threshold step in the ALJ's RFC determination. *Id.*

Credibility questions concerning a plaintiff's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the plaintiff and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When the ALJ

articulates the inconsistencies that undermine the claimant's subjective complaints and those inconsistencies are supported by the record, the ALJ's credibility determination should be affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

The ALJ did not err in partially discounting Plaintiff's credibility due to the inconsistencies between some of the medical evidence and Plaintiff's subjective complaints. Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). A lack of objective medical evidence is one such inconsistency an ALJ may consider in assessing credibility. *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004).

Contrary to Plaintiff's suggestion that the ALJ completely discredited his subjective statements and ignored medical evidence supporting ALJ's alleged limitations, the ALJ acknowledged that some objective medical evidence supported Plaintiff's statements. R. at 13. At the same time, the ALJ found that other objective medical evidence contradicted the full extent of Plaintiff's alleged limitations and disabling pain. *Id.* The ALJ observed that Dr. Lingenfelter's treatment notes reported that Plaintiff had recovered fully from his acromion and scapula fracture. *Id.* Also, notes from Plaintiff's orthopedic surgeons stated that he had recovered from his forearm fracture and regained full range of motion in his forearm and elbow. R. at 455.

The ALJ was also warranted in finding that the lack of objective medical evidence detracted from Plaintiff's complaints of disabling back pain. Once again, the ALJ acknowledged that Dr. Donaldson's treatment notes identified back spasms and pain on movement. R. at 13. However, the ALJ also noted that Dr. Donaldson observed on several different occasions that

7

Plaintiff exhibited no signs of distress. *Id.* Furthermore, prior imaging tests and other doctor evaluations revealed no structural damage to his spine or other portions of his back except for the scapula, which subsequently healed. *Id.*

In addition to discussing the objective medical evidence, the ALJ also properly considered the inconsistency between Plaintiff's allegations and his daily activities. While Plaintiff's activities of daily living are not dispositive, "they are a factor to consider." *Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir 1996). Inconsistencies in the record, including a claimant's activities, reflect negatively on a claimant's credibility. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). The ALJ noted that the Plaintiff's testimony and disability application revealed that he participated in numerous activities that are inconsistent with allegations of disabling back pain and his other limitations. R. at 14. Specifically, Plaintiff admitted that he could perform any task that did not involve lifting his right arm above waist level, he accomplished a wide-array of chores around the house, he helped his children get ready for school, he consistently attended their sporting events, and he was capable of walking for one hour without a break. *Id*. Although these tasks by themselves do not definitively demonstrate his ability to function in the workplace, they do, when considered in combination with the abovementioned medical evidence, detract from Plaintiff's credibility. Thus, the ALJ did not err in discounting Plaintiff's credibility.

### B. The ALJ properly weighed the opinion evidence.

Plaintiff contends that the ALJ erred in giving "no weight" to the opinion letter from his occupational therapist James Priebe ("OT Priebe"). Further, Plaintiff alleges that the ALJ completely failed to include OT Priebe's opinion in the RFC determination despite the fact that it was the only medical opinion evidence relating to Plaintiff's functional limitations. Plaintiff

8

concludes that the failure to give full weight to the opinion letter is especially egregious given the lack of other medical evidence regarding Plaintiff's limitations.

Because OT Priebe is not a physician the regulations treat his opinion as an "other source" of evidence and not an "acceptable medical source." 20 C.F.R. §§ 404.1513(a), (d). Thus, under Social Security Ruling 06-03p, his opinion is not entitled to controlling weight and is simply treated as other relevant evidence of record. Additionally, an ALJ is not required to give any weight to an opinion, whether from an acceptable medical source or not, on the ultimate issue of whether the plaintiff is able to work. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). Thus, the ALJ properly disregarded the portion of OT Priebe's opinion letter that stated Plaintiff could not return to work as a printing press operator. R. at 14, 317.

Furthermore, the ALJ's statements at the hearing and in her findings indicate she *did* consider portions of the letter in determining Plaintiff's RFC. OT Priebe's letter stated Plaintiff possessed an extremely limited range of motion in his right shoulder due to his nerve injury. R. 316-17. As discussed more fully below, the ALJ's eventual hypothetical formulation to the vocational expert included the inability to reach with his right arm. R. at 47. The ALJ also explicitly stated in her findings that she considered a portion of OT Priebe's letter in formulating the RFC. R. at 14.

Contrary to Plaintiff's allegation that no other medical evidence of the record supports the RFC determination, the ALJ cited numerous medical records regarding Plaintiff's injuries. The ALJ discussed several medical records from Plaintiff's orthopedic surgeons, occupational therapists, and pain management specialists. R. 13-14. In short, the ALJ's findings suggest she considered numerous different medical records, among other evidence, in formulating the RFC.

9

### C. The ALJ properly included all of Plaintiff's credible impairments.

Plaintiff alleges the ALJ failed to consider the full extent of Plaintiff's severe and non-severe impairments in determining Plaintiff's RFC. Specifically, Plaintiff contends that the ALJ erred by not recognizing his inability to raise his arm above his waist level and his inability to "frequently handle and finger bilaterally" because he is missing the tip of his left index finger.

The ALJ properly included all credible impairments she found affected Plaintiff's ability to perform basic work activities. *Ford*, 518 F.3d at 981. Contrary to Plaintiff's suggestion, the ALJ did consider Plaintiff's inability to reach above his waist with his right arm. At the outset, the Court agrees the ALJ's opinion was deficient in two major respects regarding the statement of Plaintiff's right arm limitations. First, the ALJ erred in finding that Dr. Donaldson reported Plaintiff had "regained full range of motion in his right shoulder." R. at 13. Careful examination of Dr. Donaldson's notes reveals that he did not specifically refer to the right shoulder when remarking about "full range of motion." R. at 657-674. In fact, other portions of his notes suggest that Plaintiff had an extremely limited range of motion in his right shoulder. *Id.* Also, the ALJ's statement of Plaintiff's RFC in her opinion was ambiguously worded. The RFC in her opinion states that Plaintiff "can never reach overhead with both upper extremities or with his dominate right arm…." R. at 12. If this statement is given its strict grammatical interpretation, it reads as if Plaintiff can never reach overhead with both upper extremities *and* can never reach overhead with his dominate right arm.

The ALJ's errors, however, are harmless because in formulating Plaintiff's RFC for the hypothetical question to the VE the ALJ assumed he could not move his arm above his waist. During the hearing, the ALJ posed a hypothetical question to the VE that stated "[t]his individual can never reach overhead with both upper extremities *and can never reach* with the dominant

10

right upper extremity, and can occasionally reach with the upper left upper extremity in other directions." R. at 47 (emphasis added). This statement of limitations in the hypothetical clearly articulated that Plaintiff could never reach at all with his right upper extremity. Thus, it seems the ALJ actually credited Plaintiff with the full extent of his alleged right arm limitations. In response to this hypothetical, the VE testified that such an individual could perform three occupations. Since the ultimate conclusion of disability was premised on the limitations as stated in the hypothetical, and not on how the ALJ articulated those reasons in her opinion, the ALJ's failure to properly phrase the RFC in her findings was merely a deficiency in opinion writing rather than an outcome determinative error. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).

Similarly, the ALJ did not err in finding Plaintiff could "frequently handle and finger bilaterally" even though Plaintiff is missing the tip of his left index finger. To begin, Plaintiff's self-completed function report accompanying his disability application does not claim any limitations regarding handling due to the lack of the tip of his index finger. R. at 154. Aside from Plaintiff's hearing testimony, which the ALJ partially discounted, there is no evidence in the record demonstrating that the missing tip of his index finger affected Plaintiff's ability to handle or finger bilaterally. The hearing transcript does indicate that the ALJ was aware of this non-severe impairment that the Plaintiff alleged affected his ability to type. R. at 45. Admittedly, the ALJ could have explained why Plaintiff's missing tip of his index finger did not affect his ability to handle or finger bilaterally, but failure to cite the evidence does not indicate the ALJ completely ignored it in determining the RFC. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (internal quotations omitted) ("[A]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."). The more likely conclusion is the

11

ALJ failed to discuss the lack of the missing tip of the index finger because there was no objective medical evidence demonstrating it affected Plaintiff's ability to perform work. Given this lack of evidence, the ALJ's failure to specifically discuss the lack of the tip of index finger seems to be at most a deficiency in opinion writing that does not affect the outcome. *Hepp*, 511 F.3d at 806.

### D. The ALJ properly developed the record.

Plaintiff also argues that the ALJ failed to properly develop the record by not ordering a consultative examination or re-contacting OT Priebe. The Court holds the ALJ was neither under a duty to mandate a consultative examination nor re-contact OT Priebe.

As a threshold matter, it is the claimant's responsibility to provide medical evidence showing she is disabled. 20 C.F.R. §§ 404.1512, 416.912. The ALJ has a duty to develop the record fully and fairly, *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (citation omitted), but failure to develop the record merits reversal only when the claimant can show prejudice. *Onstad v Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). At the time the ALJ ruled on Plaintiff's application,[4] the ALJ was required to re-contact a medical source only if the source's information was inadequate to determine disability. 20 C.F.R. § 404.1512(e). Similarly, the ALJ needs to order a consultative examination when an inconsistency in the record requires it, or when the record is insufficient to support a decision. 20 C.F.R. §§ 404.1519a, 416.919a(b).

Here, the ALJ was under no duty to re-contact OT Priebe nor was she under a duty to order a consultative examination. OT Priebe's letter clearly outlined his opinion regarding Plaintiff's then-current and future functional abilities. R. 316-17. Furthermore, there was no inconsistency between OT Priebe's opinion letter and his treatment notes. R. at 316-317, 495-

---

[4] 20 C.F.R. § 404.1512(e) was revised on February 23, 2012, to modify the requirement concerning re-contacting medical sources.

12

543. When considered together with the other evidence of the record discussed above, there was enough evidence for the ALJ to determine disability. Thus, the ALJ did not fail develop the record.

### III.     The ALJ properly formulated the hypothetical question.

The ALJ posed three hypothetical questions based upon Plaintiff's potential limitations. In response to the second hypothetical, the VE stated Plaintiff could work as a surveillance system monitor, credit checker, and semiconductor bonder. Plaintiff alleges the second hypothetical question failed to include the full extent of his limitations. The Court holds that the ALJ properly formulated the hypothetical question.

Although a hypothetical question posed to a vocational expert must set forth with reasonable precision the claimant's impairments, it need only include those impairments and limitations the ALJ finds are substantially supported by the record as a whole. *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). Discredited subjective complaints are properly excluded from a hypothetical question so long as the ALJ has reason to discredit them. *See Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). The second hypothetical included all the limitations the ALJ found credible in her decision. The ALJ included Plaintiff's inability to reach with his right arm due to the nerve injury, his need to re-adjust every thirty minutes due to his back pain, and his need to take pain medicine for his back pain. R. at 47. The only alleged limitation it did not include regarded the lack of the missing tip of his index finger, but as mentioned above there was no evidence that this affected Plaintiff's ability to handle and finger bilaterally. *See Owen v. Astrue*, 551 F.3d 792, 801 (8th Cir. 2008) (internal quotations omitted) ("[A]n ALJ may omit alleged impairments from a hypothetical question posed to a vocational expert when there is no medical evidence that these conditions impose any restrictions on [the

13

claimant's] functional capabilities."). Thus, the ALJ properly formulated the hypothetical question.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 25, 2013             /s/ Greg Kays
                                      GREG KAYS, JUDGE
                                      UNITED STATES DISTRICT COURT